UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. _____

| | | |
|---|---|---|
| HARNETT HEALTH SYSTEM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| MEDICAL INFORMATION TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Harnett Health System, Inc., complaining of Defendant Medical Information Technology, Inc., hereby alleges and says as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Harnett Health System, Inc. (at times "Harnett Health") is a non-profit corporation organized and existing under the laws of the State of North Carolina.

2. Medical Information Technology, Inc. (at times "Meditech") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Westwood, Massachusetts.

3. Meditech has extensive contact with the State of North Carolina by virtue of its targeted sales of electronic medical record ("EMR") software to hospitals and other healthcare providers in the State of North Carolina, including, but not limited to, Harnett Health. Moreover, the contract at issue as set forth herein was entered into in the State of North Carolina and the breach thereof has resulted in damages being incurred in the State of North Carolina. Therefore, Meditech is subject to personal jurisdiction in North Carolina as a result of its minimum contacts with the State of North Carolina and the North Carolina long arm jurisdiction statute.

4. This matter involves citizens of different States and the amount in controversy is in excess of $75,000 and thus this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

5. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the claim occurred in Harnett County, North Carolina, which is located in the Eastern District of North Carolina.

## FACTS

6. In September of 2009, Harnett Health engaged Accenture to assist it in creating its Information Technology ("IT") future strategy, including the ultimate development of a prioritized IT plan and budget.

7. As a part of that strategy, Harnett Health sought to become eligible for stimulus money from the United States Government pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH") Act that was signed into law as a part of the American Recovery and Reinvestment Act of 2009. In order to be eligible for the maximum amount of stimulus funds, Harnett Health was required to achieve "Meaningful Use" by the end of 2011. In order to achieve "Meaningful Use" under HITECH, Harnett Health needed to install and begin using an EMR system.

8. As a part of its sales and marketing of its Meditech 6.0 electronic medical records platform (the "Meditech 6.0 Platform"), Meditech represented to the public generally, and to Harnett Health specifically, that the Meditech 6.0 Platform would allow a hospital to be eligible for stimulus funds under HITECH.

9. In addition to wanting to be eligible for stimulus funds, it was of the utmost importance to Harnett Health that any EMR platform allow for the seamless integration of

medical records throughout all departments within Harnett Health, including the emergency department. In order for Harnett Health to receive proper reimbursement for the healthcare services it provided in the emergency department, the choice of any EMR platform by Harnett Health had to include an ability to seamlessly perform acuity-based billing through the emergency department, *i.e.*, without manual determination and entry of acuity status and subsequent manual billing by hospital personnel.

10. Prior to signing the Health Care Information System Software Agreement (the "Software Agreement") attached hereto as **Exhibit 1** and incorporated herein by reference, representatives of Harnett Health met with representatives of Meditech and were assured by Meditech's representatives that all of its needs, including, but not limited to, those set forth in the previous paragraph, would be met by the Meditech 6.0 Platform.

11. Without such representation, Harnett Health would not have elected to enter into the Software Agreement and would not have agreed to incur the hardware and other costs associated with the Meditech 6.0 Platform.

12. Based on the representations made by Meditech, on March 29, 2010, Harnett Health and Meditech entered into the Software Agreement. The Software Agreement provided that Meditech had "developed and continues to enhance a version of computer software designed to operate in a 'client-server' environment, which version, together with any physical embodiment thereof and related documentation (incorporated in this Agreement as Exhibits II through XXI), are together hereinafter called LICENSED SOFTWARE. . . ."

13. Despite the reference to Exhibits II through XXI contained in the Software Agreement, no documents entitled Exhibits II through XXI were attached to the Software Agreement. Nevertheless, the Software Agreement provided that Meditech "represents and

warrants that the LICENSED SOFTWARE shall have capabilities equal to the capabilities described in Exhibits II through XXI and will operate in substantial conformity with such descriptions when delivered to Customer and installed on Customer's MEDITECH-approved computer network. . . ."

14. In the absence of Exhibits II through XXI and based upon the representations of Meditech, Harnett Health understood that the "LICENSED SOFTWARE" would have the capabilities equal to those capabilities described and advertised by Meditech when marketing the Meditech 6.0 Platform to Harnett Health, including the ability to allow integration with all of the hospital departments, including the emergency department, and the ability to perform acuity-based billing that would replace manual determination and entry of acuity status and subsequent manual billing by hospital personnel.

15. Alternatively, the ability to allow integration with all of the hospital departments, including the emergency department, and the ability to perform acuity-based billing without the need for manual entry to determine the acuity level and subsequently bill the patient at the appropriate acuity level was a fundamental function of the "LICENSED SOFTWARE."

16. After Harnett Health signed the Software Agreement, the rollout of the Meditech 6.0 Platform began. As a part of that rollout, on October 25, 2011, Meditech provided Harnett Health's IT department with documentation regarding how to build the emergency department module in order to enable the Meditech 6.0 Platform to perform the automatic acuity-based billing in the emergency department.

17. Harnett Health's IT department followed the instructions as provided by Meditech. Despite following those instructions, the automatic acuity-based billing function failed to work.

18. As a result, on November 10, 2011, Harnett Health reported the problem with the Meditech 6.0 Platform to Meditech, specifically noting the fact that the acuity points were not calculating in order to create an acuity-based charge. On November 18, 2011 and in response to the task started by Harnett Health on November 10, 2011, Meditech replied that the build performed by Harnett Health looked "fine," but that Meditech would perform a "re-index of. . . Group response dictionaries," that it expected would "solve some of [the] issues."

19. On November 28, 2011, Meditech said that "all the Doc Sections are working," and requested that Harnett Health try a new patient and retest and acuity-based billing system.

20. On November 30, 2011, Harnett Health reported to Meditech that tests were performed, and the acuity-based billing was still not working.

21. Meditech continued its efforts to make the acuity-based billing function perform throughout the month of December, but on December 30, 2011, Meditech's representative informed Harnett Health's representative that after speaking with several persons at Meditech, it was concluded that it would not be feasible for the Meditech system to recall every procedure that was done on a patient, and that, contrary to what had been represented, users of the module would have to manually select what they performed on the patient to allow the Meditech 6.0 Platform to properly determine acuity levels.

22. In January of 2012, representatives of Harnett Health and Meditech met to create a plan to work around the failure of the Meditech 6.0 Platform to properly perform the acuity-based billing. Based upon the representations of Meditech, Harnett Health decided that manually-selected level charges would be created and nursing staff would be educated on how to pick a level charge based on the work they did with the patient. Meditech then created software to allow level charge selection.

23. The "Go Live" of the level charge selection system was scheduled for February 1, 2012. Approximately one month after "Go Live," Harnett Health performed a review and discovered that the Meditech software and manual process of selecting level charges was not working. Specifically, the software caused inaccurate use of level charges, and that the the software computed lower level charges, resulting in inaccurate billing of services and missed reimbursements to Harnett Health.

24. As a result of the failure of the Meditech 6.0 Platform to properly perform acuity-based billing, and due to the failure of Meditech's level charge selection system, Harnett Health had to hire extra personnel in order to manually review and enter the appropriate acuity level for billing purposes. This manual entry resulted in both the retention of new employees whose sole job was to perform the work that the Meditech 6.0 Platform was represented to perform without manual entry, and the need to cause seasonal employees to work more hours.

25. Additionally, Harnett Health incurred expenses for consultants to address the problems caused by the Meditech 6.0 Platform, as well as charges associated with correcting the improper acuity-based billing that occurred prior to Harnett Health realizing that the manual process of selecting the level charges was not working.

26. Harnett Health eventually located a provider of a coding system to address the flaws in the Meditech 6.0 Platform, and incurred significant expenses associated with the purchase of the new coding system. Harnett Health will continue to incur significant charges associated with the use of the new coding system, all of which would have been unnecessary had the Meditech 6.0 Platform performed the acuity-based billing functions described herein.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

27. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1-26 above.

28. The Software Agreement is a binding express contract between Harnett Health and Meditech, the terms of which Meditech agreed to be bound.

29. The Software Agreement was supported by adequate consideration.

30. Harnett Health performed each and every obligation it had under the Software Agreement and has otherwise complied with the terms of the Software Agreement.

31. Meditech has breached the Software Agreement by failing to provide Harnett Health with "LICENSED SOFTWARE" that operated in substantial conformity with the representations made by Meditech to Harnett Health, specifically the ability to perform acuity-based billing without the need for manual determination and entry by Harnett Health employees.

32. As a result of the above breach by Meditech of the Software Agreement, Harnett Health has suffered actual damages in an amount to be determined at trial including: incurring significant expenses associated with performing the recommended yet ultimately insufficient manual workaround; expenses associated with re-calculation of improperly determined acuity levels; the cost of consultants to address the failure of the Meditech 6.0 Platform to work as represented; and expenses associated with obtaining a new coding system to perform the functions that the Meditech 6.0 Platform was supposed to provide.

33. In addition to the above damages caused by Meditech's breach of the Software Agreement, Harnett Health will continue to incur expenses associated with the replacement coding system as a direct result of the failure of the Meditech 6.0 Platform to perform as represented.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Warranty of Fitness for Particular Purpose)

34. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1-33 above.

35. Prior to the entry of the Software Agreement, Meditech knew the particular purposes for which Harnett Health wanted to use any new EMR software platform which it purchased. Specifically, Meditech knew that Harnett Health wanted an EMR software platform that included the ability to seamlessly perform acuity-based billing through the emergency department, *i.e.*, without manual determination and entry of acuity status and subsequent manual billing by hospital personnel.

36. Meditech knew that Harnett Health was relying on Meditech's skill and/or judgment to select or furnish a suitable EMR platform that included the ability to seamlessly perform acuity-based billing through the emergency department, without manual determination and entry of acuity status and subsequent manual billing by hospital personnel.

37. By agreeing to sell the Meditech 6.0 Platform to Harnett Health, Meditech impliedly represented that the "LICENSED SOFTWARE" would be fit for the particular purposes set forth in the preceding paragraphs.

38. The failure of the "LICENSED SOFTWARE" to allow seamless performance of acuity-based billing through the emergency department, without manual determination and entry of acuity status and subsequent manual billing by hospital personnel was a breach of the implied warranty of fitness for particular purpose set forth in N.C. Gen. Stat. § 25-2-315.

39. As a result of the breach of the implied warranty of fitness for particular purpose, Harnett Health suffered actual damages in an amount to be determined at trial including: incurring significant expenses associated with performing the recommended yet ultimately

insufficient manual workaround; expenses associated with re-calculation of improperly determined acuity levels; the cost of consultants to address the failure of the Meditech 6.0 Platform to work as represented; and expenses associated with obtaining a new coding system.

## THIRD CLAIM FOR RELIEF
### (In the Alternative, Negligent or Fraudulent Misrepresentation/Inducement)

40. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1-39 above.

41. In the alternative, if it is determined that the failure of the Meditech 6.0 Platform to perform acuity-based billing in the emergency department setting in the manner set forth herein was not a breach of the Software Agreement, which is expressly denied, then Meditech's sales and marketing persons, acting within the scope of their employment, negligently or intentionally represented to Harnett Health that it was selling a fully integrated system that would work with all of the departments within Harnett Health, including the emergency department and would allow for acuity-based billing without the need for manual entry to determine the acuity level and subsequently bill the patient based on the determined acuity level.

42. Although Meditech was aware or should have been aware that the acuity-based billing functions did not work based on its experiences at other hospitals in North Carolina, it nevertheless represented to Harnett Health that acuity-based billing in the emergency department without manual entry could occur.

43. The erroneous representations regarding the ability of the Meditech 6.0 Platform to perform acuity-based billing in the emergency department without manual entry was a misrepresentation of a material fact that Meditech knew or should have known would induce Harnett Health to enter into the Software Agreement, and further that Harnett Health would not

have entered into the Software Agreement if it had known that the Meditech 6.0 platform could not perform acuity-based billing in the emergency department without additional manual input.

44. The misrepresentations by Meditech regarding the ability of the Meditech 6.0 Platform to perform acuity-based billing without manual entry were made by Meditech to Harnett Health either intentionally in order to induce, or negligently such that a reasonable entity in the position of Harnett Health would have been induced to enter into the Software Agreement when it knew or should have known that Harnett Health would not have entered into the Software Agreement if it had known such representations were false.

45. Harnett Health did in fact rely on above material misrepresentation of fact and was induced to enter into the Software Agreement, and would not have done so had it been aware that the representations regarding acuity-based billing made by Meditech were false.

46. As a result of the misrepresentations and inducement by Meditech as described herein, Harnett Health incurred significant hardware, software and other costs, including costs associated with performing the manual entry and obtaining additional software to avoid the manual entry process, and will continue to incur costs in the future in amounts to be determined at trial, that would not have been incurred but for the misrepresentations by Meditech regarding the Meditech 6.0 Platform.

47. Additionally, if it is determined that the misrepresentations by Meditech that induced Harnett Health to enter into the Software Agreement were intentional, then Harnett Health is entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

20502.166 – 746140 v2

- 10 -

Case 5:12-cv-00600-H   Document 1   Filed 09/13/12   Page 10 of 11

(1) For an award of damages in an amount to determined at trial as a result of the material breach by Meditech of the Software Agreement and/or the breach of the implied warranty of fitness for particular purpose;

(2) In the alternative, for an award of compensatory damages in an amount to be determined at trial caused by the negligent or fraudulent misrepresentations by Meditech that resulted in Harnett Health entering into the Software Agreement;

(3) In the alternative, if it is determined that Meditech's inducement of Harnett Health to enter into the Software Agreement was fraudulent, for an award of punitive damages in an amount in excess of $10,000;

(4) That the costs of court incurred in this action be taxed against the Defendant;

(5) For such other and further relief as the Court may deem just and proper; and

(6) For a trial by jury on all issues so triable herein.

This the 13th day of September 2012.

                      WYRICK ROBBINS YATES & PONTON LLP

BY: /s/ Benjamin N. Thompson
Benjamin N. Thompson
(NC Bar No. 9005)
Charles George
(NC Bar No. 21003)
Paul J. Puryear, Jr.
(NC Bar No. 41536)
Post Office Drawer 17803
Raleigh, North Carolina 27619-7803
Telephone: (919) 781-4000
Facsimile: (919) 781-4865
BThompson@Wyrick.com
CGeorge@Wyrick.com
PPuryear@Wyrick.com

*COUNSEL FOR PLAINTIFF*